IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| NUTONE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 8:07CV305 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| JAKEL, INC., | ) | |
| | ) | |
| Defendant and | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ANZEN DENGU CO., LTD. and | ) | |
| API TECHNOLOGY, INC., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

    This matter is before the court on Jakel, Inc.'s Motion to Compel Discovery (Filing No. 66). Jakel filed a brief (Filing No. 68) and an index of evidence (Filing No. 67) in support of the motion. Anzen Dengu Co., Ltd. filed a brief (Filing No. 69) in opposition to the motion. Jakel filed a brief (Filing No. 70) in reply. No other party participated in the briefing of the motion.

## BACKGROUND

    This case arises from a fire on April 7, 2005, in a Douglas County, Nebraska home. **See** Filing No. 1. The fire allegedly started due to defects in an exhaust fan. *Id.* ¶ 8. On August 7, 2007, American Family Insurance, the insurer of the home, instituted this action against NuTone, Inc. for negligence, strict liability, and breach of implied warranties based on NuTone's design, manufacture, and distribution of the exhaust fan. **See** Filing No. 1. NuTone, a Delaware corporation with its principal place of business in Ohio, filed a third-party complaint against Jakel, a Wisconsin corporation with its principal place of business in Wisconsin. **See** Filing No. 6; Filing No. 37. NuTone alleges Jakel designed, manufactured, and supplied electrical motors, including the one installed in the Nebraska

home, to NuTone for the NuTone exhaust fans.  **See** Filing No. 6.  Based on these allegations NuTone claimed Jakel was negligent, strictly liable, and had breached warranties associated with the subject electrical motor.  *Id.*  Initially, Jakel filed an answer denying liability.  **See** Filing No. 16.  However, on September 17, 2008, Jakel also filed a third-party complaint against Anzen and API Technology, Inc.  **See** Filing No. 37.  Jakel alleges Anzen designed, manufactured, and supplied thermal cutoff devices (TCO), including one for the bathroom fan which caused the Nebraska home fire.  *Id.* ¶ 5.  Jakel asserts Anzen sold the TCOs to API Technology, Inc., a New York corporation with its principal place of business in New York, who subsequently sold TCOs to Jakel.  *Id.*  Accordingly, Jakel alleges claims for negligence, strict liability, and breach of warranties against Anzen and API Technology, Inc.  *Id.*  On November 10, 2008, the Clerk of Court entered default against API Technology, Inc. on Jakel's claims.  **See** Filing No. 44.

On February 20, 2009, Anzen, a citizen of Japan, filed a motion to dismiss the third-party complaint against it for lack of personal jurisdiction.  **See** Filing No. 53.  On March 12, 2009, the court granted Jakel an extension of time to respond to the motion to dismiss until August 3, 2009, to allow Jakel an opportunity to obtain jurisdictional discovery.  **See** Filing Nos. 56 and 60 (text order).  On April 10, 2009, Jakel served Anzen with interrogatories and requests for production.  **See** Filing No. 67 - Ex. A.  On May 8, 2009, Anzen served responses and objections to the discovery requests.  *Id.* - Ex. B.  Generally, Anzen objects to the discovery because, it argues, the discovery is not relevant to the issue of the exercise of personal jurisdiction over Anzen.  More specifically, Anzen contends the requests impermissibly seek evidence of Anzen's contacts nationwide, rather than evidence limited to the State of Nebraska.  Jakel argues the nationwide discovery sought is necessary to determine whether Anzen delivered its products into the stream of commerce with the expectation that the products would be purchased by consumers in Nebraska.  The parties were unable to resolve their dispute without court involvement.

## ANALYSIS

As a starting point, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description,

nature, custody, condition, and location of any documents . . ." Fed. R. Civ. P. 26(b)(1). However, "[t]he District Court does have discretion to limit the scope of discovery." *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998). To determine if a matter is discoverable, the analysis requires the court to first determine whether the sought discovery is relevant to a claim. Relevance in this instance is limited to discovery related to exercising personal jurisdiction over Anzen. If a matter is relevant, the court must determine if the matter is subject to a privilege precluding discovery, or if the court should otherwise use its discretion to limit discovery on the matter. Accordingly, although limited, relevant evidence includes "any matter that could bear on, or that reasonably could lead to other matter that could bear on" the jurisdictional discovery issues. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). "Determinations of relevance in discovery rulings are left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion." *Hayden v. Bracy*, 744 F.2d 1338, 1342 (8th Cir. 1984).

It may be appropriate to permit jurisdictional discovery to establish whether personal jurisdiction is justified. *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008); *Oppenheimer*, 437 U.S. at 351 n.13 (noting "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues"). At this time, the court will not evaluate the merits of the jurisdictional issue. However, the court's methodology for considering personal jurisdiction provides the boundaries for the discovery dispute.

A court has personal jurisdiction over a nonresident defendant if such jurisdiction comports with due process. *Steinbuch*, 518 F.3d at 585. "Due process requires 'minimum contacts' between a nonresident defendant and the forum state, such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 585-86 (**quoting** *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). Under this inquiry, the court must focus "on whether the defendant purposely availed itself of the privilege of conducting activities within the forum state and thereby

3

invoked the benefits and protections of its laws. *Id.* at 586 (**quoting** *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In the Eighth Circuit, courts consider five factors when evaluating the sufficiency of a defendant's minimum contacts: "1) the nature and quality of the defendant's contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the contacts; 4) the interests of the forum state in providing a forum for its residents; and 5) the convenience of the parties." *Id.* The third factor distinguishes between specific jurisdiction and general jurisdiction. *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while [g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Id.* (alternation in original) (internal quotation marks and citations omitted).

Here, Anzen is a resident of Japan with its principal place of business in Japan. Anzen states it is not licensed or qualified to do business in Nebraska. Anzen has no place of business in Nebraska and pays no Nebraska taxes. Under these circumstances, Jakel seeks information about Anzen's internal structures, and marketing and selling of TCOs around the country such that the TCOs were used by consumers in Nebraska and the region. The discovery requests broadly include Anzen's corporate affiliations and communications with "any person located within the United States." In contrast to Jakel's position, Anzen contends the court's evaluation of personal jurisdiction is limited, thus evidence about Anzen's contacts with other states or the United States as a whole is irrelevant.

"In determining whether there is personal jurisdiction, the courts consider the defendant's contacts with the forum in the aggregate, not individually; they look at the totality of the circumstances." *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995). There are several different types of activities relevant to the jurisdictional analysis. When evaluating the nature and quality of contacts, a court will examine relevant contact by correspondence between the nonresident defendant and others. **See** *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007) (noting court lacked specific jurisdiction over nonresident defendants whose

4

isolated correspondence and travel to forum state was unrelated to business concerns). Additionally, the court may consider contacts made by others "***on behalf of*** the defendant." [Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd., 89 F.3d 519, 523-24 (8th Cir. 1996)](). "The Supreme Court has indicated that 'when commercial activities are "carried on in behalf of" an out-of-state party those activities may sometimes be ascribed to the party, at least where [it] is a "primary participan[t]" in the enterprise and has acted purposefully in directing those activities.'" [Id.]() (**quoting** [Burger King Corp. v. Rudzewicz, 471 U.S. 462, 480 n.22 (1985)]()).

Moreover, the "mere placement of a product into the stream of commerce, without more, is insufficient to constitute purposeful availment." [Steinbuch, 518 F.3d at 587-88](). However, the Eighth Circuit has "recognized a state's exercise of jurisdiction over a seller who delivered its products to a regional distributor with an expectation that the distributor would penetrate the forum state." [Id.](); **see** [Vandelune v. 4B Elevator Components Unlimited, 148 F.3d 943, 947-48 (8th Cir. 1998)]() (noting a "manufacturer has 'purposefully reaped the benefits' of the laws of each State in [a] trade area for due process purposes" when the products pour in through a distributor). Moreover, "continuous placement of a significant number of products into the stream of commerce with knowledge that the product would be distributed into the forum state represents sufficient minimum contacts to satisfy due process." [Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, (8th Cir. 1994)]() (**analyzing** [Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102 (1987)]()). In any event, "[w]here a federal statutory basis for jurisdiction exists, then [a court will] analyze whether the defendant has sufficient minimum contacts with the United States as a whole to determine whether personal jurisdiction is constitutional under the Due Process Clause of the Fifth Amendment." [Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 946 n.10 (7th Cir. 2000)]() (**analyzing** [Fed. R. Civ. P. 4(k)(2)]()); **see also** [102 Am. Jur. 3d Proof of Facts § 30 (2008)]() (listing discovery issues related to personal jurisdiction).

The court finds Jakel has met the burden of showing discovery of information for Anzen's activities directing contacts outside Nebraska, but within the United States, is relevant to the issue of personal jurisdiction. Such discovery will aid in a determination

5

about Anzen's volume of business inside and outside of Nebraska and to what extent Anzen participates in decisions to distribute products to a multi-state market that includes Nebraska. Specifically, information about Anzen's corporate structure and parent corporations may indicate contacts directed at the forum state made by others on behalf of Anzen.

Although both parties listed the disputed interrogatories and requests for production in their briefs, the parties did not address the merits of each item aside from the issue of national scope. Accordingly, the court will not provide unrequested narrowing for any particular discovery. However, the parties made cursory comments about a few items which the court will address. The court finds Jakel has failed to meet the burden of showing the relevance of discovery regarding communications between Anzen and "any person located within the United States." **See** Filing No. 67, Ex. B - Interrogatory No. 16 and Request for Production No. 5. Additionally, to the extent the discovery is not already limited by time, the parties shall assume a reasonable time period. Finally, the discovery is limited to Anzen's activities as they relate to products for distribution inside the United States, as opposed to products only for distribution outside the United States. Upon consideration,

**IT IS ORDERED:**

1. Jakel, Inc.'s Motion to Compel Discovery (Filing No. 66) is granted in part and denied in part.

2. Anzen shall have to **on or before July 21, 2009**, to provide supplemental responses to Jakel, Inc.'s discovery requests.

DATED this 6th day of July, 2009.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

6