IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| NUTONE, INC., a Ohio Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | 8:07CV305 |
| | ) | |
| v. | ) | |
| | ) | |
| JAKEL, INC., | ) | |
| | ) | |
| Defendant and | ) | |
| Third-Party Plaintiff, | ) | MEMORANDUM AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| ANZEN DENGU CO., LTD. and | ) | |
| API TECHNOLOGY, INC., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

This matter is before the court on Anzen Dengu Co., LTD's ("Anzen") motion to dismiss, Filing No. 53, the third-party complaint, Filing No. 37, filed against it by Jakel, Inc. ("Jakel"), pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction. Anzen also filed an index of evidence which contains a declaration of Sinichir Moroi, a manager for Anzen, and a brief and reply brief in support of its motion. Filing Nos. 54, 55 and 83. Jakel opposes the motion and has filed a brief and evidence in support of its position. Filing Nos. 77, 78 and 79. In the original complaint, plaintiff American Family Insurance Company[1] alleged that a fan installed in a residence proximately caused a fire and resulted in damage and loss of structure and contents in the amount of $104,760.36. Filing No. 1. In its third-party complaint, Jakel alleges that Anzen designed, manufactured and supplied thermal cutoff devices ("TCO") and sold them to API Technology ("API"). Filing No. 37. API is a

---

[1]Since that time the parties stipulated and the court granted the dismissal of American Family Insurance from this lawsuit. Filing Nos. 31 and 32.

citizen of New York.  API thereafter sold the TCOs to Jakel who sold the TCOs to Nutone. Nutone then assembled TCOs into bathroom exhaust fans, one of which was installed in the bathroom in Nebraska which is the subject of this lawsuit.  Jakel alleges that any liability on its part will have been the result of the failure of Anzen to exercise reasonable care in the design, manufacture, inspection and sale of its TCOs, as well as breach the implied warranty of merchantability and fitness for a particular purpose.  If judgment is entered in favor of Nutone, Jakel's third-party complaint requests contribution or indemnity against Anzen.

Mr. Sinichir Moroi, a manager for Anzen, declares that Anzen is a Japanese corporation and maintains no office or place of business in the United States.  Filing No. 54, Dec. of Moroi, at ¶ 2.  According to Mr. Moroi, Anzen is not licensed to do business, nor does it pay taxes, have a mailing address, or a telephone number or a bank account, or real or personal property in the State of Nebraska.  *Id*. at ¶¶ 3-6.  Additionally, Moroi states that Anzen has never marketed or sold goods or services in Nebraska nor does it have any subsidiaries in Nebraska.  *Id*. at ¶¶ 7-9.  Further, Anzen has no employees or agents who reside in Nebraska, nor does it pay salaries or expenses to any person or entity located in Nebraska.  *Id*. at ¶ 10.  Finally, Mr. Moroi declares that Anzen does not "create, control or employ the distribution system that brought the products referenced in the Complaint in the above captioned action into the State of Nebraska, if, in fact, such products were brought into the State of Nebraska as alleged in the Complaint."  *Id*. at ¶ 11.

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). To determine whether a plaintiff

has presented a prima facie case, this court views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor. *Id.* "Jurisdiction over a nonresident defendant must satisfy the requirements of the forum state's long-arm statute and of due process." *Id.* "Because Nebraska's long-arm statute has been construed to permit jurisdiction to the extent of constitutional limits, the court must decide whether the exercise of personal jurisdiction over the defendants in this case comports with due process." *Id*.

Due process requires that a defendant have sufficient "minimum contacts" with the forum state that are more than random, fortuitous, or attenuated, such that summoning the defendant would not offend traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985); *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). "Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro,* 340 F.3d at 562.

Two theories exist for evaluating minimum contacts: (1) general jurisdiction, for cases in which a nonresident defendant has had "continuous and systematic" contacts with the forum state, even if the injuries in the particular case did not arise from those contacts; and (2) specific jurisdiction, for cases in which the injury giving rise to the lawsuit occurred in or had some connection with the forum state. *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1073 (8th Cir. 2004); *Bell Paper Box v. U.S. Kids, Inc.,* 22 F.3d 816, 819 (8th Cir. 1994); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn.8-9 (1984). Under both theories, "the central question is whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state and should,

therefore, reasonably anticipate being haled into court there." *Pecoraro*, 340 F.3d at 562; *Burger King*, 471 U.S. at 472 ("litigation results from alleged injuries that 'arise out of' or 'relate to' these activities"); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

"With those principles in mind, the court considers five distinct factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties." *Pecoraro,* 340 F.3d at 562; *Steinbuch v. Cutler,* 518 F.3d 580, 586 (8th Cir. 2008); *Digi-Tel Holdings, Inc. v. Proteq Telcoms, Ltd.*, 89 F.3d 519, 522-523 (8th Cir. 1996). The first three factors are closely related and are of primary importance, while the last two factors are secondary. *Id.*; *Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir. 1995).

"The forum state does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *World-Wide Volkswagen*, 444 U.S. at 297-98. However, "a defendant placing a product into the stream of commerce, without more, does not constitute an act purposefully directed toward the forum state." *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 376 (8th Cir. 1990). "A manufacturer whose product ends up in the forum state on an attenuated, random, or fortuitous basis has not purposefully directed its activities at residents of that state." *Vandelune v. 4B Elevator Components Unlimited,* 148 F.3d 943, 948 (8th Cir. 1998).

Jakel objects to Anzen's motion to dismiss the third-party complaint. Jakel contends that Anzen has met the minimum contacts with the State of Nebraska so as to confer jurisdiction. Jakel contends that the "direct" types of conduct argued by Anzen are not required under Eighth Circuit law. *See Barone v. Rich Bros. Interstate Display Fireworks Co.,* 25 F.3d 610, 611 (8th Cir. 1994) (defendant had no office in Nebraska, no agent for service of process, no distributor, no advertisements, nor direct mailing of its products to Nebraska, but the court concluded personal jurisdiction existed). The Eighth Circuit has found personal jurisdiction based on the process by which the defendant's products arrived in Nebraska. *Clune v. Alimak AB,* 233 F.3d 538, 543 (8th Cir. 2000) (if sale by Swedish company is not an isolated occurrence but arises from efforts of the manufacturer or distributor to directly or indirectly market to other states, it is not unreasonable to subject the party to suit in that state); *Barone,* 25 F.3d at 611 (same as to Japanese manufacturer); *Vandelune v. 4B Elevator Components Unlimited,* 148 F.3d 943, 948 (8th Cir. 1998) (same as to British manufacturer). This analysis allows for jurisdiction under certain circumstances over a defendant who puts its product in the stream of commerce. *Id*. Jakel alleges that Anzen sold millions of TCOs through its distributors in Ohio, Wisconsin, Missouri, and North Carolina, who sell to people all over the country. Anzen also visited Jakel's office in St. Louis and applied for a certificate for its product from Underwriters Laboratories, which certification further enables Anzen to market its product throughout the country and the world.

The court finds that the motion to dismiss must be denied at this time. First, the court agrees with Jakel that the stream of commerce test applies in this case. According to the evidence presented to date, Anzen sold tens of millions of the TCOs here in the

5

United States, many to Jakel, from 1998 until 2008. Nolan Aff., Ex. A, Filing No. 79. Anzen has clearly placed its TCO product in the stream of commerce. Additionally, Anzen sold to multiple distributors as listed above in a number of states. Nolan Decl., Exs. A-C, Filing No. 79. Anzen sent representatives to the United States to assist with the distribution of the TCOs. *Id.* at Exs. B, E, F, and I, Filing No. 79. Anzen obtained the certification to make the TCO more saleable in the United States. *Id.* at Ex. J, Filing No. 79. Based on the evidence presented to date, the court finds the contacts by Anzen with the State of Nebraska are not fortuitous. On the contrary, the acts by Anzen seem designed to place its products, and in particular the TCO, through Midwest regional distributors into the states they serve, including the State of Nebraska. Under these circumstances, Nebraska has the right to accord a forum to its residents. Accordingly, the court will deny the motion to dismiss.

THEREFORE, IT IS ORDERED that Anzen's motion to dismiss, Filing No. 53, is denied.

DATED this 23rd day of September, 2009.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.